UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, | ) Case No.: n/a |
| Plaintiff, | ) |
| v. | ) Judge: n/a |
| JOHN ROE; XYZ, LLC, | ) Magistrate Judge: n/a |
| Defendants. | ) **JURY DEMAND** |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**I.     INTRODUCTION**

1.     Plaintiff Jane Doe ("Doe") brings this action under a pseudonym to stop Defendants John Roe ("Roe") and XYZ, LLC ("XYZ") (pseudonymous) from disseminating her intimate images online without her consent, exploiting her Performer Name, image, and likeness without authorization, and exceeding the scope of the sole, narrow release that Doe agreed to for a limited creative project referred to as the Original Audiovisual Work.

2.     Roe's persistent posting of intimate unauthorized images, and threatening to post further unauthorized images, including those depicting Doe identifiably in intimate or nude contexts, have violated both federal and state law—exposing Doe to extreme emotional distress and a severe risk of irrevocable professional harm. XYZ is Roe's entity, which he uses to produce or distribute various media and, on information and belief, to publish Doe's unauthorized images.

3. Doe therefore seeks damages, injunctive relief, and all other lawful remedies to halt Defendants' unlawful conduct and safeguard her privacy, her professional identity, and her contractual rights.

## II. NATURE OF THE CASE

4. This lawsuit arises from Roe's uploading and threatening to upload Doe's intimate, nonconsensual images and videos on public websites or social media platforms, in violation of 15 U.S.C. § 6851 (the federal "revenge porn" statute).

5. Roe and XYZ further exploited Doe's Performer Name, image, and likeness for their own benefit or publicity without valid authorization—constituting a misappropriation of Doe's right of publicity under Tennessee law.

6. In so doing, Defendants' actions were so outrageous that they inflicted severe emotional distress upon Doe, a recognized tort under Tennessee common law.

7. Defendants further invaded Doe's privacy by publicly disclosing deeply personal and intimate images and videos of her, taken during a romantic relationship between Doe and Roe, actions that are highly offensive to any reasonable person and lack any legitimate public interest or justification.

## III. THE PARTIES

8. Plaintiff Jane Doe is a citizen of the United States who, at all relevant times, has resided in the state of Tennessee. She is a professional artist who performs under a distinctive Performer Name that carries commercial value in the creative and entertainment sectors.

9. Defendant John Roe is, on information and belief, a resident of the state of Tennessee and the Middle District of Tennessee. Roe conducted the acts alleged herein in both his individual capacity and through or on behalf of business entities under his control.

10. Defendant XYZ is a limited liability company formed under the laws of Tennessee, with its principal place of business in Tennessee. On information and belief, XYZ is wholly owned and controlled by Roe. XYZ is an instrumentality of Roe, used to publish or distribute the unauthorized postings and facilitate other activities alleged herein.

## IV. JURISDICTION AND VENUE

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action includes a claim arising under federal law (15 U.S.C. § 6851, relating to nonconsensual intimate visual depictions). Supplemental jurisdiction exists over Doe's state-law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this district, because Defendants reside or are subject to personal jurisdiction in this district, and because Defendants have expressly consented to venue in this district.

13. This Court has general personal jurisdiction over Defendants, both of which reside in this district. This Court also has specific personal jurisdiction over Defendants because they engaged in the alleged conduct—posting, threatening, or otherwise disseminating unauthorized intimate images and videos—within or directed into this forum, harming Doe in this forum, and maintaining continuous contacts with this forum.

## V. FACTUAL BACKGROUND

14. Doe is a professional performer who has used her Performer Name in connection with her creative work for decades.

15. Doe's repertoire as a performer includes performances at family-friendly events and venues.

16. In approximately 2009, Doe met Roe and they developed a romantic relationship.

17.     During his romantic involvement with Doe, Roe suggested collaborating on various creative or artistic projects.

18.     Doe and Roe agreed to produce one specific project, referred to herein as the Original Audiovisual Work, for which Doe signed a written release which was intended to authorize, and which she understood as authorizing, the use of her image and likeness only within the scope of the original agreed work, where she would be credited under her real name, with no connection to her Performer Name.

19.     Doe signed the written release soon after having consumed an intoxicating quantity of alcohol, supplied by Roe, and was in an intoxicated state at the time of signing the release. Doe signed the release on the basis of Roe's oral representation that signing it was "a formality" and oral statement that "this [i.e., the release] is for [the Original Audiovisual Work]".

20.     Doe did not sign any other written releases authorizing the use of her name, image, or likeness by Roe.

21.     The Original Audiovisual Work did not incorporate any explicit nudity or intimate depictions of Doe. The written release did not authorize, and was intended not to authorize, the inclusion of nudity or intimate depictions of Doe within the Original Audiovisual Work.

22.     The Original Audiovisual Work did not incorporate clear, unobstructed images of Doe's face.

23.     The signed release for the Original Audiovisual Work did not allow Roe or any entity he controlled to use Doe's Performer Name for marketing or publicity.

24.     On multiple occasions, Doe requested for Roe to provide her with a copy of the signed release, as she did not have a copy. Roe consistently refused.

25. While the parties maintained a romantic relationship, Roe and Doe occasionally took private photographs and videos reflecting intimate moments (the "Private Depictions"). Many of the Private Depictions were taken while Doe was under the influence of alcohol and other drugs, including Valium, which Roe supplied and pressured Doe to consume.

26. Doe never consented to any distribution, much less a public distribution, of the Private Depictions. Doe did not enter any written or oral agreement agreeing to, or provide any other indication of consent or assent to, distribution of Private Depictions. Rather, Doe specifically informed Roe on multiple occasions that she did not consent to any distribution of the Private Depictions, or to any use of her Performer Name in conjunction with the Original Audiovisual Work or in conjunction with any work in which she appeared nude.

27. While the parties maintained a romantic relationship, Roe and Doe occasionally took photographs and videos including artistic nudity (the "Artistic Depictions"). Many of the Artistic Depictions were taken while Doe was under the influence of alcohol and other drugs, including Valium, which Roe supplied and pressured Doe to consume.

28. Doe permitted Roe to display and use, in artistic contexts, some of the Artistic Depictions (but not the Private Depictions) by limited oral agreements, always on the condition that such displays not include clear views of her face, nor associate the depicted images with her Performer Name or real name.

29. On information and belief, Roe abided by this condition consistently during the parties' romantic relationship with respect to any disclosures of images or videos of Doe.

30. Roe and XYZ included non-identifiable versions of the Artistic Depictions, not showing Doe's face, in a published book of photographs, an art website, and multiple art shows, with the consent of Doe.

31.    At some point, Roe formed or controlled XYZ, which he used for film production and media-related endeavors.

32.    Doe never authorized XYZ to post, distribute, or publicize any identifiable nude images or video recordings of her, or to use her Performer Name in conjunction with the Original Audiovisual Work, or to use her Performer Name or real name as an identifier for her image in the display of any Artistic Depictions.

33.    Doe ended her romantic relationship with Roe in March 2020. Within a few weeks of the end of the relationship, Roe uploaded a Private Depiction to a photo-sharing platform where it was visible to Roe's followers. Doe was identifiable in this Private Depiction, which surprised and alarmed Doe as Roe had never before publicized nude or intimate images of her where her face was recognizable.

34.    Doe interpreted the photo upload as a threat that Roe would continue uploading Private Depictions as revenge for ending the relationship. Doe informed Roe that it was unacceptable to upload Private Depictions and identifiable nude images of her to the photo sharing platform and begged him not to continue doing so. In response, Roe blocked Doe from being able to view uploads to his account on the photo sharing platform.

35.    Roe continued to upload nude and intimate photos of Doe, in which Doe is identifiable, including Private Depictions, to a photo-sharing platform and distributed the nude and intimate images of Doe to his followers, without Doe's consent.

36.    In multiple of these nude and intimate images, Doe is identifiable and her genitals, pubic area, and/or bare nipples are visible.

37. On information and belief, at least some of these uploads of nude and intimate images in which Doe is identifiable and her genitals, pubic area, and/or bare nipples are visible occurred on or after October 1, 2022.

38. At the time of these acts of distribution, Roe had knowledge of Doe's lack of consent and affirmative expressions of non-consent to such distributions.

39. After Roe blocked Doe from being able to view his uploads to the photo sharing platform, Doe instructed Roe not to contact her again. Nevertheless, Roe drove to Doe's residence on at least two occasions and left a note on her car on one of these occasions. Doe interpreted this behavior as threatening.

40. After the end of their romantic relationship, Doe repeatedly requested that Roe provide to her, and not retain, the Private Depictions in which Doe appears nude. Roe refused each time and insisted that the photos were "just between us".

41. In 2024, Doe performed at least two events, after which attendees approached her and told her they had seen nude and intimate images of her that were uploaded by Roe to the photo-sharing platform.

42. Also after October 1, 2022, Roe posted or continued to post intimate images and videos of Doe on various social media platforms, including sites where Roe and XYZ promoted their media content.

43. Roe additionally used Doe's Performer Name in conjunction with the intimate images and videos of Doe that he continued to post online.

44. XYZ, acting at Roe's direction, publicized content including nude or intimate images of Doe online.

45. At least within the last year, Roe has posted online modified versions of the Original Audiovisual Work that include nude images and videos of Doe in which she is identifiable and in which her face is clearly visible, as well as private audio recordings that Doe recorded for Roe.

46. The modifications to the Original Audiovisual Work violate the parties' arrangement regarding the use of Doe's image by adding identifiable nude images of Doe.

47. Roe attempted to harass Doe by inviting Doe's brother to edit the modified version of the Original Audiovisual Work in which Doe appears identifiably nude.

48. Roe has used Doe's Performer Name in conjunction with, and to market and promote, the modifications to the Original Audiovisual Work, including by using the Performer Name in the written description of the modified version of the Original Audiovisual Work on a video-sharing social media site.

49. Doe repeatedly requested that Roe and XYZ remove these unauthorized photos and videos from circulation, asserting her privacy and the limited scope of the release for the Original Audiovisual Work.

50. Roe instead claimed that Doe had signed broad form "releases" permitting unfettered use of her images, which Doe never signed or agreed to.

51. Meanwhile, various viewers online encountered nude images and videos of Doe circulated by Roe and XYZ, causing Doe reputational harm.

52. Doe has sustained and is suffering from severe emotional distress, anxiety, and humiliation, fearing that Roe would continually re-post or further expose these images and videos, and that awareness of the images and videos would harm her career.

53. Roe's postings were intended to coerce or intimidate Doe into withdrawing legitimate concerns about her privacy.

54. Roe and XYZ have profited or attempted to profit from Doe's Performer Name by associating themselves with her recognized creative identity.

55. Roe and XYZ have continued to assert that they have the right to distribute nude and intimate images and videos of Doe, including by representing that they are so entitled in response to requests by Doe for the sites to take such content down. As a result of these representations, on information and belief, a video and associated listing that improperly associate Private Depictions with Doe's Performer Name will become publicly available again on a video sharing site no later than March 7, 2025.

56. Unless enjoined, Roe and XYZ will continue to maintain the online availability of, and distribute, nude and intimate images of Doe without Doe's consent.

## COUNT I
**Violence Against Women Reauthorization Act (15 U.S.C. § 6851)**
(Against Both Defendants)

57. Plaintiff Doe re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. Under 15 U.S.C. § 6851, it is unlawful to disclose intimate visual depictions of an individual without consent, if the depictions contain images of that individual's naked genitals, pubic area, or female nipples, and the disclosure is made with reckless disregard or knowledge of the individual's lack of consent.

59. As set forth above, Defendants posted and threatened to post nude and intimate images of Doe, including images showing her genitals, pubic area, and bare nipples, and distributed those images online on or after the effective date of this provision.

60. Defendants knew that Doe did not consent to these disclosures, and Roe intentionally limited Doe's visibility into his disclosures of her private images in response to her express statement that she did not consent.

61. As a direct and proximate result of Defendants' actions, Doe has suffered severe emotional distress, reputational harm, and other damages, entitling her to all available remedies under 15 U.S.C. § 6851, including not less than $150,000 in liquidated compensatory damages, as well as punitive damages, attorneys' fees and costs, and injunctive relief.

## COUNT II
### Violation of Tennessee Right of Publicity (Tenn. Code § 47-25-1105)
(Against Both Defendants)

62. Plaintiff Doe re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

63. Under Tenn. Code § 47-25-1105, a person's name, likeness, and other indicia of identity have commercial value and may not be used without authorization for commercial or promotional purposes.

64. Defendants used Doe's Performer Name, image, and likeness to promote or attract attention to their postings and modified versions of the Original Audiovisual Work without Doe's consent or valid authorization, in excess of the scope of any valid authorization that may have existed, and with knowledge that Doe did not consent to such promotion.

65. Defendants, on information and belief, received or intended to receive commercial or reputational benefit by publishing or hosting content featuring Doe's Performer Name and likeness.

66. Defendants' conduct has infringed Doe's right of publicity, causing her compensable harm, including damage to her reputation and lost opportunities to control her own image and brand, for which she is entitled to damages and injunctive relief.

## COUNT III
### Intentional Infliction of Emotional Distress (Tennessee Common Law)
(Against Both Defendants)

67. Plaintiff Doe re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

68. Defendants' posting and threatened posting of Doe's nude and intimate images, despite her repeated objections and clear lack of consent, and using them to threaten her as revenge for ending her romantic relationship with Roe, constitute conduct that is extreme and outrageous.

69. Defendants intended to cause, or at minimum recklessly disregarded the likelihood of causing, severe emotional distress to Doe by threatening her privacy, professional standing, and personal dignity.

70. As a direct and proximate result of Defendants' extreme and outrageous conduct, Doe has suffered and continues to suffer severe emotional distress, anxiety, and humiliation.

71. Doe is entitled to recover damages for her emotional suffering and other losses sustained as a result of Defendants' conduct, as well as any additional relief deemed just and proper by the Court.

## COUNT IV
### Breach of Contract
(Against Both Defendants)

72. Plaintiff Doe re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Doe, Roe, and XYZ entered into an agreement for the Original Audiovisual Work that included a release, but this agreement excluded nudity or intimate depictions and did not permit the use of Doe's Performer Name for marketing.

74. Doe did not enter into any other valid written agreements with Roe and/or XYZ.

75. In the alternative, due to the circumstances surrounding the signing of the release for the Original Audiovisual Work including Doe's intoxication, the written release never became part of the parties' contractual arrangement.

76. Defendants, through posting intimate footage purporting to be part of the Original Audiovisual Work (but never authorized by Doe) and using Doe's Performer Name to publicize it, exceeded and violated the scope of the release, to the extent that any valid scope exists.

77. As a result of Defendants' breach, Doe suffered harm including reputational damage, loss of control over her performances and identity, and emotional distress.

78. Doe seeks all available contract damages for this breach, including compensation for her losses and specific injunctive relief requiring Defendants to take down all content outside the scope of the parties' arrangement regarding the use of Doe's name, image, and likeness.

## COUNT V
### Invasion of Privacy (Public Disclosure of Private Facts)
(Against Both Defendants)

79. Plaintiff Doe re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

80. Under Tennessee law, one who gives publicity to a matter concerning the private life of another may be liable for invasion of privacy if the matter publicized (a) would be highly offensive to a reasonable person and (b) is not of legitimate public concern.

81. Defendants publicized and disseminated private, intimate images, videos, and audio recordings of Doe—depictions that were never intended for public view—by uploading these materials to social media platforms, photo-sharing websites, and/or other channels accessible to members of the public.

82. Such images and videos include nude or intimate depictions that clearly reveal personal details about Doe's private life, going far beyond any legitimate public interest.

83. Defendants' conduct in exposing these intensely private facts about Doe is highly offensive to a reasonable person, as it not only violates her personal dignity but also jeopardizes her professional reputation and emotional well-being.

84. As a direct and proximate result of Defendants' actions, Doe has suffered emotional distress, mental anguish, reputational harm, and other damages entitling her to relief, including compensatory damages, punitive damages where appropriate, and injunctive relief preventing any further unauthorized disclosure of her private information.

## COUNT VI
### Fraudulent Inducement
(Against Both Defendants)

85. Plaintiff Doe re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

86. In the alternative to Doe's express denial of ever signing any "Broad Form Release," if Doe is found to have signed a written instrument purporting to broadly authorize the public use of her image, such signature was procured by Defendants through fraudulent inducement.

87. Specifically, Defendant Roe, acting individually and for his controlled entity, XYZ, induced Doe to sign an instrument at a time when Doe was under the influence of alcohol that he had provided and encouraged her to consume.

88. Roe misrepresented that the document was "just a formality" limited to the Original Audiovisual Work and thus implied that the document contained no provisions allowing use of Doe's nude depictions for broader publication.

89. Doe relied on Roe's misrepresentations and omissions regarding the nature and scope of the written instrument. Roe knew or should have known that Doe was in a compromised state and did not fully understand the document's terms.

90. By withholding the true effect of the release and exploiting Doe's inebriated state, Roe intended Doe to rely upon his representations in signing a document that exceeded the scope of any legitimate agreement for the Original Audiovisual Work.

91. As a direct and proximate result of Defendants' fraudulent conduct, Doe has been harmed through the alleged "Broad Form Releases," which Defendants have brandished to justify publicly disseminating her intimate materials. Doe has suffered emotional distress, reputational harm, and other damages, entitling her to compensatory damages, punitive damages where appropriate, and any additional relief deemed just and proper by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court enter judgment in her favor and against Defendants John Roe and XYZ, LLC, jointly and severally, as follows:

A. **Injunctive Relief** enjoining Defendants from further posting, distributing, or otherwise disseminating Doe's intimate images or videos; ordering them to remove, destroy, and withdraw from visibility by others any such media in their possession or under their control; and ordering them to cease and desist from referencing, and remove and take down all unauthorized references to, Doe's Performer Name in conjunction with Defendants' use of Doe's image or likeness.

B. **A Protective Order** prohibiting Defendants from making any disclosures revealing or discussing nude or intimate images or videos in which Doe is identifiable, or Doe's private information, outside of court proceedings.

C. **Damages** in an amount to be proven at trial, including compensatory, consequential, special, and punitive damages where applicable, for Defendants' unlawful actions.

D. **Statutory Damages and Fees** under 15 U.S.C. § 6851 and other relevant statutes, including attorney's fees and costs as permitted by law.

E. **Pre- and post-judgment interest** on the damages.

F. **Additional or Alternative Relief** that the Court deems just, equitable, and proper, including the costs of suit.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 3, 2025

Respectfully submitted,

*/s/ Chanelle Acheson*
Chanelle Acheson
Waddey Acheson LLC
1030 16th Ave. South, Suite 300
Nashville, TN 37212
(615) 839-1100