# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 3:25-cv-00249 |
| | § | |
| JOHN ROE, XYZ, LLC; | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM [Doc. 16]

## I. INTRODUCTION

This is a sanctionable lawsuit filed by an actress and arguable public figure who is perpetrating fraud. *See generally* Doc. 20. Desiring to keep her fraud secret and to prevent the Defendants from exposing it in this litigation, the Plaintiff has moved for leave to litigate under a pseudonym. *See* Doc. 16. The Plaintiff also asks this Court to enter a prior restraint prohibiting the Defendants from identifying her, and she seeks a preemptive sealing order requiring that any document that identifies her be filed under seal. *See* Doc. 17 at 6.

There is a reason why all federal "circuit courts that have considered the matter have recognized a strong presumption against the use of pseudonyms in civil litigation." *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022). Fraudulent cases like this are a significant part of the concern. *See, e.g., Doe v. Smith*, 429 F.3d 706, 710

(7th Cir. 2005) ("if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability."); *Roe v. Does 1-11*, No. 20-cv-3788-MKB-SJB, 2020 WL 6152174, \*5 (E.D.N.Y. Oct. 14, 2020) ("to the extent that Plaintiff's claims are without merit, . . . there is certainly a countervailing public interest in knowing the Plaintiff's identity."). There also is no lawful justification for entering the Plaintiff's requested prior restraint here, and the Plaintiff offers none. For these reasons, and for the additional reasons set forth below, the Plaintiff's *Motion to Proceed Under Pseudonym* (Doc. 16) should be **DENIED**.

## II. FACTS

The Plaintiff is an actress who spent over a decade participating in the Defendants' bona fide artistic productions as an actress and a model. *See* Doc. 1 at ¶ 14–17. Before doing that work, the Plaintiff executed—twelve days apart, and using both her actual name and her stage name—broad form releases granting the Defendants "the free and unrestricted permission and right to use any images of [the Plaintiff], made now, in the past, or in the future, moving or still or in any other form, in any way they see fit." Docs. 20-1, 20-2. In the decade that followed, more than 10,000 artistic works depicting the Plaintiff were then produced, displayed, exhibited, and in some cases sold by the Defendants—all with the Plaintiff's knowledge and consent.

As recently as May 3, 2021, the Plaintiff represented to the Davidson County Circuit Court that her only assets were those detailed on pages 3–7 of her Marital

Dissolution Agreement. *See* Doc. 20-3 at 3–7; *id.* at 9 ¶ 9 ("The parties each declare that they have made full disclosure to each other of all assets in which they have an interest, whether marital or separate property, and that all such assets are accounted for by the provisions of the Agreement."). Conspicuously, none of the assets that the Plaintiff identified included ownership in—or copyright ownership of—any of the more than 10,000 artistic works depicting the Plaintiff that the Defendants created during the preceding decade. *Id.* at 3–7.

The Plaintiff later decided that she wanted to own some of the Defendants' works depicting her. *See* Doc. 1 at ¶ 40. Thus, she demanded them. *Id.* When that didn't work, the Plaintiff asserted bogus copyright ownership of the valuable works that the Defendants had produced over the course of the preceding decade, and she filed (through an intermediary) multiple takedown notices under the Digital Millenium Copyright Act, seeking to restrict the Defendants' lawful display of the works at issue. On March 4, 2025, one such takedown notice was adjudicated unfavorably to the Plaintiff based on the broad form releases that the Plaintiff executed. *See* Doc. 20-4.

The same day the Plaintiff's takedown notice failed, the Plaintiff upped the ante, filing her unverified Complaint here secretly and pseudonymously. *See* Doc. 1. In it, the Plaintiff asserts (among other things) that the works at issue "have commercial value and may not be used without authorization for commercial or promotional purposes," which the Plaintiff claims she never provided. *See* Doc. 1 at ¶ 63.

All but one of the Plaintiff's claims relies on her false assertion that she executed only one "narrow release" for "a limited creative project[.]" *Id.* at ¶ 1; *see also id.* at ¶ 20 ("[Plaintiff] did not sign any other written releases authorizing the use of her name, image, or likeness by [Defendant]."); *id.* at ¶ 50 (claiming that the Plaintiff "never signed to or agreed to" execute broad form releases); *id.* at ¶ 74 (asserting that the Plaintiff "did not enter into any other valid written agreements"). The Plaintiff did not just execute one project-specific release, though. Instead, she *also* executed the two broad, general releases that this Court has provisionally kept secret from public view. *See* Docs. 20-1, 20-2.

The Plaintiff knows as much. That is why she alleges "[i]n the alternative" that her broad form releases were procured by "fraudulent inducement" when she "was under the influence of alcohol[.]" *See* Doc. 1 at ¶¶ 86–87. The Plaintiff manufactured this theory sometime between February 27, 2025 and the filing of this lawsuit a week later. *Compare id.* at ¶¶ 86–91 (presenting this fabricated theory); *with* Doc. 20-5 (never mentioning intoxication). The Plaintiff also apparently has overlooked the fact that she signed the two releases *twelve days apart*. *See* Docs. 20-1, 20-2. And the Plaintiff's newly manufactured theory that she owns the copyright to—or otherwise has some ownership interest in—the valuable works at issue in this case directly contravenes what she represented to the Circuit Court of Davidson County on May 3, 2021, *see* Doc. 20-3 at 3–7, 9 ¶ 9—a fact that her lawsuit omits.

Despite these facts—or perhaps because of them—the Plaintiff has moved for leave to litigate this case under a pseudonym and has sought other anti-transparency

-4-

relief. *See* Doc. 16. For several reasons, the Plaintiff's motion should be denied.

## III. ARGUMENT

"The people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). Thus, "[a]s a rule, 'lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties.'" *Doe v. Weinstein*, 484 F. Supp. 3d 90, 97 (S.D.N.Y. 2020) (cleaned up); *see also Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016) ("[A]nonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes.").

For this reason, "[t]he Federal Rules of Civil Procedure do not provide for the use of pseudonyms." *Does 1-3*, 39 F.4th at 25. "To the contrary, the Rules require that '[t]he title of the complaint must name all the parties,' Fed. R. Civ. P. 10(a), and that '[a]n action must be prosecuted in the name of the real party in interest,' *id.* [Fed. R. Civ. P.] 17(a)(1)." *Id.*

"Permitting parties to proceed anonymously is also in tension with the common law presumption of public access to judicial proceedings and records." *Id.* (collecting authority). Thus, the presumption of public access to litigating parties' identities "has 'constitutional overtones,' as a plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings, a right that is supported by the First Amendment[.]" *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2021 WL 2651188, at *2 (M.D. Tenn. June 28, 2021) (quoting *Doe v. Del Rio*, 241 F.R.D. 154,

156 (S.D.N.Y. 2006)). Given this context, numerous courts have emphasized the vital public interests that are served by ensuring that litigating parties' identities are transparent. *See id.*; *see also Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("The normal presumption . . . that parties must use their real names . . . is loosely related to the public's right to open courts and the right of private individuals to confront their accusers." (internal citations omitted)); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974) ("As we view the matter, lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties."); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008) (holding that the requirement that parties be identified by name "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly"); *Blue Cross & Blue Shield United of Wis.*, 112 F.3d at 872 ("The people have a right to know who is using their courts."); *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992) (holding that the requirement that parties be identified by name "serves more than administrative convenience" as it "protects the public's legitimate interest in knowing all the facts involved, including the identifies of the parties").

With these considerations in mind, "[i]t is the exceptional case in which a plaintiff may proceed under a fictitious name." *Frank*, 951 F.2d at 323. Thus, when adjudicating a motion to proceed using a pseudonym, "the court must 'start from the premise that proceeding pseudonymously is the exception, rather than the rule.'" *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 694 F. Supp. 3d 1040, 1044 (M.D. Tenn.

2023) (quoting *Doe v. Franklin County, Ohio*, No. 2:13-cv-00503, 2013 WL 5311466, at \*2 (S.D. Ohio Sept. 20, 2013)); *see also Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (holding that a party may proceed anonymously only in "exceptional cases").

When determining whether to grant a plaintiff leave to litigating using a pseudonym, the Sixth Circuit has instructed courts to consider four factors:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981)).

Based on these factors, "[t]o obtain [a pseudonymity] order, a plaintiff must show that his 'privacy interests ***substantially outweigh*** the presumption of open judicial proceedings.'" *Doe v. Vanderbilt Univ.*, No. 3:20-CV-00356, 2021 WL 6496833, at \*1 (M.D. Tenn. Mar. 11, 2021) (quoting *Porter*, 370 F.3d at 560) (emphasis added). "[N]o factor alone . . . compels allowing a plaintiff to proceed anonymously." *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 694 F. Supp. 3d 1040, 1044 (M.D. Tenn. 2023). And certainly where, as here, *none* of these factors is met and countervailing considerations militate strongly *against* granting pseudonymity, a court should deny leave to proceed pseudonymously. *Cf. Vanderbilt Univ.*, 2021 WL 6496833, at \*1.

Here, in a four-sentence paragraph that is unaccompanied by any evidentiary support, the Plaintiff asserts that her claims implicate the second *Porter* factor. Doc.

17 at 3–4.  The Plaintiff also asserts—in similarly conclusory fashion—that public disclosure risks severe retaliation and harm; that the Defendants will not be prejudiced by pseudonymity; and that allowing the Plaintiff to proceed pseudonymously would minimally impact the public interest.  *Id.*  As detailed below, the Plaintiff is wrong in every respect.  Thus, her claim for pseudonymity should be denied, and the additional relief that she seeks should be denied as well.

## A.    NONE OF THE *PORTER* FACTORS SUPPORTS PSEUDONYMITY.

To support her claim of pseudonymity, the Plaintiff asserts that the "sexually explicit" images at issue in this litigation are "self-evidently personal and sensitive." Doc. 17 at 3.  The opposite is true, however: something the Plaintiff admitted through counsel days before filing this bogus litigation.  *See* Doc. 20-5 at 2 (admitting that the Plaintiff "understood that certain photographs or images, including some involving nudity, were intended for artistic display").  Before the Plaintiff modeled for the photos and acted in the videos at issue in this case, the Plaintiff also executed multiple broad form releases twelve days apart—using both her legal name and her stage name—assigning the Defendants "the free and unrestricted permission and right to use any images of" the Plaintiff.  *See* Docs. 20-1, 20-2.

Apart from these facts, unless this Court takes at face value the unsworn statements that the Plaintiff has made through counsel, this Court is not in a position to conclude on the current record that the images at issue are "self-evidently" evidence of anything.  *See Plumbers Loc. 98 Defined Ben. Funds v. Controlled Water, Inc.*, No. 03-CV-72888-DT, 2006 WL 2708544, at *2 n.3 (E.D. Mich. Sept. 19, 2006)

-8-

("It is universally settled that 'statements of counsel are not evidence' and do not create issues of fact.") (collecting cases); *In re DeBouver*, No. 12-30898, 2012 WL 6761364, at *5 (Bankr. N.D. Ohio Dec. 31, 2012) ("[T]he court cannot simply assume such facts and they are not in evidence."). And whether this case implicates matters that are "personal and sensitive" is not the standard anyhow. *See Porter*, 370 F.3d at 560; *see also Metro Gov't of Nashville and Davidson Cnty.*, 694 F. Supp. 3d at 1045 ("As this Court has previously held, 'the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity.'") (quoting *Doe v. Fedex Ground Package Sys., Inc.*, No. 3:21-CV-00395, 2021 WL 5041286, at *5 (M.D. Tenn. Oct. 29, 2011) (in turn quoting *Ramsbottom*, 2021 WL 2651188, at *4)); *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) ("[M]ost litigation entails embarrassment of some form for one or both parties. Although a voluntary BDSM relationship may reasonably be characterized as 'highly personal,' . . . it is distinguishable from other highly personal matters, e.g., hereditary health issues, in that a voluntary BDSM sexual relationship is a choice. Simply put, neither the existence nor the nature of a voluntary sexual relationship, standing alone, is sufficient to warrant sealing a judicial proceeding in whole or in part. That some potential for embarrassment or criticism may result from plaintiff's choice to engage in a BDSM relationship does not justify removing litigation materials from public access."). Thus, none of the four *Porter* factors favors pseudonymity, including the lone factor the Plaintiff contends applies here.

**B.  Countervailing considerations strongly support transparency.**

On the other side of the ledger, countervailing considerations strongly support making the Parties' identities transparent.  These considerations go well beyond "the universal level of public interest in access to the identities of litigants" that triggers the heavy presumption against pseudonymity in all cases.  *Megless*, 654 F.3d at 409. In particular, pseudonymity should be denied here because: (1) there is significant evidence that the Plaintiff's claims are fraudulent; (2) the Plaintiff is an adult; (3) the Plaintiff arguably is a public figure; and (4) the Defendants' opposition to pseudonymity is legitimately motivated by their need to be able to identify the Plaintiff to defend themselves.

**1.  <u>There is significant evidence that the Plaintiff's claims are fraudulent.</u>**

As proven by the releases the Plaintiff executed and the contrary claims the Plaintiff made to a different Court, there is significant evidence that the Plaintiff's claims here are fraudulent.  *See generally* Doc. 20; *see also* Doc. 20-1; Doc. 20-2; Doc. 20-3.  In May 2010, the Plaintiff executed—twelve days apart, and using both her actual name and her stage name—broad form releases granting the Defendants "the free and unrestricted permission and right to use any images of [the Plaintiff], made now, in the past, or in the future, moving or still or in any other form, in any way they see fit."  *See* Docs. 20-1, 20-2.  The Plaintiff's claim that she owns the valuable artistic works that followed those releases also conflicts with what she represented to the Davidson County Circuit Court that divorced her just a few years ago.  *See* Doc. 20-3 at 3–7; *id.* at 9 ¶ 9 ("The parties each declare that they have made full disclosure to

-10-

each other of all assets in which they have an interest, whether marital or separate property, and that all such assets are accounted for by the provisions of the Agreement."). And the Plaintiff provably manufactured, between February 27, 2025 and the filing of this lawsuit a week later, her "alternative" "intoxication" theory concerning the effectiveness of the broad form releases that preclude her claims here. *Compare* Doc. 1 at ¶¶ 86–91 (presenting this fabricated theory); *with* Doc. 20-5 (never mentioning intoxication).

These facts matter for two main reasons:

<u>*First*</u>, the heavy presumption against pseudonymity can never be overcome where, as here, there is significant evidence that the Plaintiff's allegations "are false." *Smith*, 429 F.3d at 710 ("if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability."); *cf. Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016) (recognizing that a named witness, including a party acting as a witness, "may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account."); *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996) (recognizing that litigation may involve "sensitive subjects, but they are at the heart of plaintiff's credibility in making the serious accusations he has made here. He cannot use his privacy interests as a shelter from which he can safely hurl these accusations without subjecting himself to public scrutiny, even if that public scrutiny includes scorn and criticism."); *O.L. v. Jara*, No. 21-55740, 2022 WL 1499656, *3 n.1 (9th Cir. May 12, 2022) (noting that "O.L. makes

-11-

it difficult to track her cases because she uses initials or pseudonyms," and warning that "[f]lagrant abuse of the judicial process" through such tactics "cannot be tolerated") (citation omitted); *Smith v. Corizon Healthcare*, No. 116CV00461DADEPGPC, 2016 WL 3538350, at *3 (E.D. Cal. June 28, 2016), *report and recommendation adopted sub nom. Smith v. Healthcare*, No. 116CV00461DADEPG, 2016 WL 4679712 (E.D. Cal. Sept. 7, 2016) ("Plaintiff's identity is relevant also for tracking vexatious litigants.").

<u>Second</u>, a Plaintiff's likelihood of success is relevant to whether pseudonymity should be permitted. *See, e.g., Roe v. Does 1-11*, No. 20-CV-3788-MKB-SJB, 2020 WL 6152174, *5 (E.D.N.Y. Oct. 14, 2020) ("to the extent that Plaintiff's claims are without merit, . . . there is certainly a countervailing public interest in knowing the Plaintiff's identity."); *Does 1-3*, 39 F.4th at 25 ("The plaintiffs' likelihood of success on the merits of their appeal must be considered in light of the strong presumption against pseudonymity."). And because powerful record evidence that the Plaintiff cannot overcome contravenes the Plaintiff's claims here, *see* Doc. 20-1; Doc. 20-2; Doc. 20-3, the Plaintiff is unlikely to succeed.

## 2. <u>The Plaintiff is an adult.</u>

The Plaintiff is an adult, and neither her motion nor her Complaint asserts otherwise. That matters, because courts "'have generally required adult plaintiffs to proceed in their own name' even when their allegations relate to sexual assault or sexual harassment." *Doe v. Maloit*, No. 24-CV-02383-PAB-KAS, 2025 WL 358134, at *3 (D. Colo. Jan. 31, 2025) (quoting *Doe H. v. Haskell Indian Nations Univ.*, 266 F.

-12-

Supp. 3d 1277, 1289 (D. Kan. 2017)); *see also, e.g., Doe v. McLellan*, No. CV-205997-GRB-AYS, 2020 WL 7321377 (E.D.N.Y. Dec. 10, 2020); *Doe v. Bd. of Regents of Univ. of New Mexico*, No. CIV 20-1207 JB/JHR, 2021 WL 4034136 (D.N.M. Sept. 4, 2021); *Doe v. Shakur*, 164 F.R.D. 359, 361–62 (S.D.N.Y. 1996); *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995); *Doe v. Univ. of Rhode Island*, No. 93-0560B, 1993 WL 667341, at *3 (D.R.I. Dec. 28, 1993); *Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D. Miss. 1987). Thus, the Plaintiff's status as an adult disfavors pseudonymity.

### 3. <u>The Plaintiff arguably is a public figure</u>

The Plaintiff—an actress—describes herself as "a professional performer[.]" Doc. 1 at ¶ 14. That matters, too, because "the status of the litigant as a public figure" cuts against a claim for pseudonymity. *Megless*, 654 F.3d at 409 (quoting *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997)). Thus, this consideration disfavors pseudonymity as well.

### 4. <u>The Defendants' opposition to pseudonymity is legitimately motivated.</u>

That the Defendants' opposition to pseudonymity is legitimately motivated here disfavors pseudonymity, too. *See id.* Here, the Defendants' opposition to pseudonymity is legitimate: there is no way for the Defendants to defend themselves from the serious allegations—including *criminal* allegations—that the Plaintiff has levied against them if they cannot identify the Plaintiff, and the Defendants have strong interests in defending themselves publicly against the Plaintiff's scurrilous claims. *See Doe*, 923 F. Supp. at 142 ("The defendants . . . have a powerful interest

-13-

in being able to respond publicly to defend their reputations, not only in court but also in other situations where the claims in the lawsuit may be of interest to those with whom the defendants have business or other dealings. Part of that defense will ordinarily include direct challenges to the plaintiff's credibility, which may well be affected by the facts plaintiff prefers to keep secret here[.]"). Nor is it simply the Plaintiff's *name* that matters here. This case also turns on her *signatures*, which necessarily identify her. *See* Doc. 20-1; Doc. 20-2. It turns further on her status as a party to preclusive litigation where she made representations to a court that conflict with her claims here, which necessarily resulted in a court order that identifies her, too. *See* Doc. 20-3. And it turns on a decade-long course of conduct in which the Plaintiff—on video—made clear repeatedly that she understood that the artistic works in which she acted and modeled were intended for public dissemination.

There is no way to introduce evidence of these matters without disclosing the Plaintiff's identity. Thus, impropriety-concealing secrecy is especially unwarranted here. This consideration favors transparency, too. *Cf. Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983) ("secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption."). Because this case covers conduct that spans over a decade, publicity also will enable the Defendants to locate potential witnesses, including those who can speak to the Plaintiff's asserted damages. *Cf. Doe*, 310 F.R.D. at 225 ("It is conceivable that witnesses, upon the disclosure of Doe's name, will 'step forward [at trial] with valuable information about the events or the credibility of witnesses.'")

(cleaned up).

### 5. The Plaintiff's 15 U.S.C. § 6851(b)(3)(B) does not change the outcome.

The Defendants acknowledge that this case involves a claim under 15 U.S.C. § 6851. *See* Doc. 1 at 9–10. The Defendants also acknowledge that 15 U.S.C. § 6851(b)(3)(B) provides that "the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." *Id.*

But for the fact that the Plaintiff has tossed in a section 6851 claim, this would be an easy case, because without the statutory authority that section 6851(b)(3)(B) confers, there is no plausible justification for granting the Plaintiff's pseudonymity request. *See supra*. But the relief available under section 6851(b)(3)(B)—which a court "may" grant—is discretionary for a reason, and it reflects a recognition that pseudonymity is not a right and that some cases do not warrant it.

This case does not warrant pseudonymity. Several section 6851-specific reasons beyond those already outlined above compel that conclusion.

*First*, the Plaintiff does not even purport to have personal knowledge that her claims in this case arose after section 6851 became effective. Instead, she makes that claim "[o]n information and belief" only. *See* Doc. 1 at ¶ 37 ("**On information and belief**, at least some of these uploads of nude and intimate images in which Doe is identifiable and her genitals, pubic area, and/or bare nipples are visible occurred on or after October 1, 2022."). Thus, it is not clear that the statute even theoretically applies here, and the Plaintiff herself does not purport to know. *Id.*

*Second*, although the Plaintiff carefully neglects to plead when she contends

-15-

that the allegedly offending postings occurred, it is obvious that some of what she complains about long predates section 6851's effective date (and, apart from that defect, would be time-barred regardless). *See, e.g.,* Doc. 1 at ¶ 33 (describing a publication that occurred "[w]ithin a few weeks" of "March 2020").

*Third*, an essential ingredient of any section 6851 claim is that an image was disseminated "without the consent of the individual[.]" *See* 15 U.S.C. § 6851(b)(1)(A). Here, though, the Plaintiff—a professional actress—provided her consent through written, signed releases that she executed twelve days apart using both her actual name and her stage name. *See* Docs. 20-1, 20-2. The Plaintiff also has admitted giving her later (and independent) consent to at least some of the nude photos involving her. *See* Doc. 20-5 at 2 (admitting that the Plaintiff "understood that certain photographs or images, including some involving nudity, were intended for artistic display"). For these reasons and many more—including the Plaintiff's decade-long course of conduct and her active participation in the public dissemination, publication, and exhibition of the images involving her—the Plaintiff's section 6851 claim has no realistic chance of success.

*Fourth*, apart from the statutory basis for her pseudonymity claim, the Plaintiff is seeking what effectively is a protective order (and which the Plaintiff herself describes as one). *See* Doc. 16 at 2 ("Plaintiff respectfully requests that the Court grant leave to proceed under a pseudonym and enter any additional protective orders necessary to maintain the confidentiality of Doe's identity"). But to obtain a protective order, a movant must establish its claim for protection with "specific

-16-

facts[.]" *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). That means *evidence*. And here, the Plaintiff—who initiated this action by unverified Complaint (Doc. 1) and also has chosen not to support her motion for pseudonymity with a sworn declaration or any other evidence (*see* Docs. 16–17)—has offered none.

Instead, the Plaintiff bases her claim for pseudonymity on unsworn statements of her counsel alone. But such statements are not evidence of anything. *See, e.g., Ashdown v. Buchanan*, No. 2:17-CV-495, 2021 WL 2643111, at *5 (S.D. Ohio June 28, 2021) ("The statements of counsel in their memoranda are not evidence.") (citing *Tapco Prods. Co. v. Van Mark Prods. Corp.*, 446 F.2d 420, 429 (6th Cir. 1971) (unsworn self-serving statements of counsel are not evidence); *Overlook Mut. Homes, Inc. v. Spencer*, 666 F. Supp.2d 850, 853 n. 3 (S.D. Ohio 2000) (statements of counsel in memorandum are not evidence); *Bond v. Antero Res. Corp.*, 328 F.R.D. 187, 194 (S.D. Ohio 2018) (conclusory assertions of counsel are not evidence)); *see also Plumbers Loc. 98 Defined Ben. Funds*, 2006 WL 2708544, at *2 n.3 ("It is universally settled that 'statements of counsel are not evidence' and do not create issues of fact.") (collecting cases). Thus, having chosen not to offer this Court any evidence to support her claim for pseudonymity, this Court may not—whether under section 6851(b)(3)(B) or otherwise—lawfully grant it to her, because it is not possible for the Plaintiff to meet her heavy burden of proving that her claimed "'privacy interests substantially outweigh the presumption of open judicial proceedings'" based on her counsel's unsworn statements alone. *Vanderbilt Univ.*, 2021 WL 6496833, at *1 (quoting *Porter*, 370 F.3d at 560).

For all of these reasons, this Court should not be "persuaded that the subject matter of this lawsuit necessarily justifies Plaintiff proceeding pseudonymously." *Maloit*, 2025 WL 358134, at *3. Thus, even considering the Plaintiff's section 6851 claim in isolation, the Plaintiff's motion for leave to proceed pseudonymously should be denied.

## C. THE PLAINTIFF'S CONTRARY ARGUMENTS ARE UNPERSUASIVE.

Citing unverified allegations in her Complaint as support, the Plaintiff makes various contrary arguments. None has merit.

The Plaintiff first claims that "publicly identifying her here would substantially increase the risk of retaliatory conduct" because the Defendant's "past actions . . . demonstrate a credible likelihood of future harassment." Doc. 17 at 4 (citing Doc. 1 at ¶¶ 33–35, 47). But this claim relies solely on allegations made in an unverified pleading and arguments by her counsel, and "[a]llegations in unverified pleadings or arguments of counsel are not evidence." *Baker v. Claiborne Cnty.*, No. 3:21-CV-380-KAC-JEM, 2024 WL 2885902, at *2 (E.D. Tenn. June 7, 2024) (citing *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022); *United States v. Wilson*, 168 F.3d 916, 924 n.6 (6th Cir. 1999)), *app. dismissed sub nom. Baker v. Claiborne Cnty., Tennessee*, No. 24-5620, 2024 WL 4529704 (6th Cir. Sept. 26, 2024). Despite multiple opportunities, the Plaintiff also has produced no evidence to support any of what she has alleged in this case, while the Defendant immediately produced significant evidence that the Plaintiff is lying. *See* Doc. 20-1; Doc. 20-2; Doc. 20-3. Further, because the Plaintiff's identity is known to the Defendants, *see* Doc. 17 at 4

-18-

("Defendants undeniably know who [Plaintiff] is[.]"), it is impossible for pseudonymity to address the Plaintiff's asserted concern about the Defendants' "retaliatory conduct" or "future harassment" of her anyhow. Doc. 17 at 4.

Further, where an alleged injury arising from the disclosure of intimate images has already occurred—as it has here—the case for pseudonymity diminishes. *See Maloit*, 2025 WL 358134, at *4. In *Maloit*, a district court was persuaded that this factor weighed against pseudonymity because "the injury of which Plaintiff complain[ed] ha[d] already occurred[.]" *Id.* The staleness of the disclosure also mattered. *See id.* Per the complaint there, "the photographs were allegedly taken between 2006 and 2012 and posted 'as far back as 2016' before spreading to various websites along with Plaintiff's personally identifying information." *Id.* (citation omitted).

Here, too, the proverbial cat has been out of the bag here for many years. *See* Doc. 1 at ¶ 33 (describing a publication that occurred "[w]ithin a few weeks" of "March 2020"). Nevertheless, it did not generate—until years later—any complaint from a plaintiff who both has serious credibility problems and transparent ulterior motives. Based on the rights afforded to the Defendants by multiple valid releases executed by the Plaintiff back in May 2010, s*ee* Docs. 20-1, 20-2, the Defendants also have been taking—and afterward, publishing—nude images of the Plaintiff, with her knowledge and consent, *for nearly fifteen years*. Thus, this is not the extraordinary case that warrants pseudonymity.

The Plaintiff next claims that "public association of [her] real name with

-19-

explicit content jeopardizes her livelihood and reputation, particularly given her performing career in family-friendly venues." Doc. 17 at 4. But such claims do not support pseudonymous litigation. *Cf. Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-CV-8220 (JPO), 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018) ("At bottom, Plaintiff wants what most employment-discrimination plaintiffs would like: to sue their former employer without future employers knowing about it. But while that desire is understandable, our system of dispute resolution does not allow it."). Thus, "courts mostly refuse to allow pseudonymity aimed at avoiding 'the annoyance and criticism that may attend any litigation,' including 'inability to secure future employment,' 'scrutiny from current or prospective employers,' 'economic harm,' 'economic or professional concerns,' 'reputational harm,' 'blacklisting,' or 'embarrassment and humiliation.'" Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 HASTINGS L.J. 1353, 1420 (July 2022) (collecting cases).

The Plaintiff's claim on the matter also is unworthy of belief given the Plaintiff's own pre-litigation admission that she "understood that certain photographs or images, ***including some involving nudity***, were intended for artistic display[,]" Doc. 20-5 at 2 (emphasis added). And despite the Plaintiff's claim that the harm she suffered here began in March of 2020, *see* Doc. 1 at ¶ 33, nowhere in her Complaint does the Plaintiff allege that she has lost any opportunities at so-called family-friendly venues or elsewhere during the five-year period that followed, *see generally* Doc. 1.

For all of these reasons, pseudonymity is not warranted here.

**D.** **THE PUBLIC INTEREST SUPPORTS TRANSPARENCY.**

Given the serious and *criminal* nature of the Plaintiff's allegations against them, *see id.*, the Defendants should be allowed to defend themselves publicly. Open proceedings discourage dishonesty and promote evidence-gathering. *See San Bernardino Cnty. Dep't of Pub. Soc. Servs. v. Superior Ct.*, 232 Cal. App. 3d 188, 202 (Cal. Ct. App. 1991) ("open proceedings discourage perjury and might encourage other witnesses to come forward which in turn leads to more accurate fact-finding") (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (Brennan, J., concurring) ("Both Hale in the 17th century and Blackstone in the 18th saw the importance of openness to the proper functioning of a trial; it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality.")). Those concerns are not trivial, especially where—as here—the actual facts differ markedly from the Plaintiff's unverified allegations. *See generally* Docs. 20; 20-1; 20-2; 20-3.

This case involves demonstrably fraudulent claims by an adult Plaintiff actress who released her rights to the images in questions nearly 15 years ago, *see* Docs. 20-1, 20-2, and who, by her own admission, "understood that certain photographs or images, including some involving nudity, were intended for artistic display[,]" *see* Doc. 20-5. The Plaintiff's claim to own the copyright to the valuable artistic works at issue here also conflicts with what the Plaintiff—publicly and recently—represented to a different court about her assets. *See* Doc. 20-3 at 3–7; *id.* at 9 ¶ 9.

With these considerations in mind, transparency is essential to the integrity of

-21-

these proceedings; it is essential to enable witnesses (like the Plaintiff's ex-husband, to whom she made the specific representations about her assets) to understand who is involved in them; and it is essential to further Tennessee's longstanding public policy that "'[n]o one shall be permitted to profit by [her] own fraud, or to take advantage of [her] own wrong, or to found any claim upon [her] own iniquity[.]'" *Box v. Lanier*, 79 S.W. 1042, 1045 (Tenn. 1904). The Defendants also note that "[t]he development of the concept of public access" arose with concerns about avoiding exactly the sort of secret proceedings the Plaintiff wants here in mind. *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177 n.6 ("The development of the concept of public access to judicial proceedings in the seventeenth and eighteenth centuries arose in part as a reaction to secret proceedings in the Star Chamber and other prerogative courts.").

## E.  PLAINTIFF'S ALLEGED PRIVACY INTERESTS WOULD BE SERVED BY THE COURT ENTERING A PROTECTIVE ORDER GOVERNING THE DISCLOSURE AND USE OF THE ALLEGEDLY "INTIMATE" IMAGES AT ISSUE.

"[I]n determining the appropriate level of protection, 'it is important to ensure that a protective order 'is no broader than is necessary' to serve the intended purposes.'" *United States v. Darden*, No. 3:17-CR-00124, 2017 WL 3700340, at *2 (M.D. Tenn. Aug. 28, 2017) (quoting *United States v. Williams*, No. 15-10145-RGS, 2015 WL 5923551, at *3 (D. Mass. Oct. 9, 2015) (in turn quoting *United States v. Smith*, 985 F. Supp. 2d 506, 545 (S.D.N.Y. 2013))). Thus, this Court should not permit pseudonymity when a narrower form of relief will serve the claimed privacy interests at stake here.

-22-

The only (claimed) matters of the "utmost intimacy" at issue in this litigation are what the Plaintiff characterizes as "sexually explicit" images of her.  Doc. 17 at 3. Consequently, keeping the identities of the Parties to this action secret—rather than entering a limited protective order governing the Parties' use of the images at issue in this litigation—would be a ham-handed solution to the Plaintiff's claimed privacy concerns.  Instead, an appropriately tailored protective order governing the public filing of the images themselves will suffice.  *Cf. Darden*, 2017 WL 3700340, at *2.

## F. THERE IS NO LAWFUL BASIS FOR ENTERING A PRIOR RESTRAINT.

In a single-sentence unburdened by authority, the Plaintiff separately "requests that any documents containing personally identifying information be filed under seal, and that the Court enter a mutual pseudonymity order directing the parties and their counsel to refrain from publicizing the parties' true names or any identifying information."  Doc. 17 at 6.  The Plaintiff's demand for a sweeping prior restraint, however, is utterly inconsistent with the Supreme Court's instruction that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *see also* Volokh, *supra*, at 1376 ("Such injunctions are generally unconstitutional prior restraints on speech and can seriously interfere with . . . defendants' ability to rebut the allegations against them, and with media parties' ability to cover the news by interviewing the parties.  They therefore, I think, violate the First Amendment.").

Nothing the Plaintiff has identified would justify entering a prior restraint

here. "In the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself. Indeed, the Supreme Court has never upheld a prior restraint, even faced with the competing interest of national security or the Sixth Amendment right to a fair trial." *See Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226–27 (6th Cir. 1996). It also goes without saying that the Plaintiff's interest in litigating pseudonymously ranks at least marginally below national security concerns like the release of the Pentagon Papers in terms of societal interests. Given that the claims underlying this litigation are provably fraudulent, *see generally* Doc. 20, this case also is not the one to test the boundaries of the judiciary's authority to issue prior restraints. Thus, the Plaintiff's demand for a prior restraint should be denied as well.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Proceed Under Pseudonym (Doc. 16) should be **DENIED**.

-24-

Respectfully submitted,

By:    /s/ Daniel A. Horwitz     
         DANIEL A. HORWITZ, BPR #032176
         SARAH L. MARTIN, BPR #037707
         MELISSA K. DIX, BPR #038535
         HORWITZ LAW, PLLC
         4016 WESTLAWN DR.
         NASHVILLE, TN 37209
         (615) 739-2888
         daniel@horwitz.law
         sarah@horwitz.law
         melissa@horwitz.law

         *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, a copy of the foregoing was served via

the Court's e-filing system upon:

Chanelle Acheson
Waddey Acheson LLC
1030 16th Ave. South, Suite 300
Nashville, TN 37212
(615) 839-1100
chanelle@waddeyacheson.com

*Counsel for Plaintiff*


By:     /s/ Daniel A. Horwitz_____
        Daniel A. Horwitz