**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 3:25-cv-00249 |
| | § | |
| JOHN ROE, XYZ, LLC; | § | |
| | § | |
| *Defendants.* | § | |

# DEFENDANTS' SUPPLEMENTAL BRIEF RESPONDING TO APRIL 24, 2025 ORDER

## I. INTRODUCTION

In its April 24, 2025 Order, this Court detailed its "standard approach" to pseudonymity requests, *see* Doc. 35 at 4, which this Court's Order correctly observes are subject to "'rigorous'" review, *id.* at 2 (quoting 5A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1321 (4th ed. 2018)). This Court also has invited "both sides to supplement their submissions—if they wish—in light of the Court's standard approach as just recited." *Id.* at 4.

As detailed below and in their previous submissions, the Defendants share the Court's view that pseudonymity requests in section 6851(b)(3)(B) are subject to "a court's discretion to weigh the ordinary presumption of openness that applies in the usual case." *Id.* The Defendants also agree that "the usual *Porter* analysis should

apply." *Id.* at 3. The Defendants believe further that—at minimum—some inquiry into the Plaintiff's likelihood of success on the merits is relevant to whether this Court should grant a pre-judgment pseudonymity order. For all of these reasons, pseudonymity is improper here.

## II. ARGUMENT

### A. WHETHER TO GRANT PSEUDONYMITY IN SECTION 6851 CASES IS A DISCRETIONARY DETERMINATION THAT SHOULD BE MADE ACCORDING TO THE *PORTER* FACTORS.

15 U.S.C. § 6851(b)(3)(B)—which concerns "[p]reservation of anonymity" in section 6851 cases—provides that, "[i]n ordering relief under subparagraph (A), the court ***may*** grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(B) (emphasis added). "[T]he word 'may' *clearly* connotes discretion." *Biden v. Texas*, 597 U.S. 785, 802 (2022) ("This Court has 'repeatedly observed' that 'the word "may" *clearly* connotes discretion.'") (emphasis in original; cleaned up). "The use of the word 'may' in section [6851(b)(3)(B)] thus makes clear that" pseudonymity "is a tool that [courts have] 'the authority, but not the duty,' to use." *Id.* (quoting *Lopez v. Davis*, 531 U.S. 230, 241 (2001)); *see also id.* (The word "'may' does not just suggest discretion, it '*clearly* connotes' it." (quoting *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1609 (2020))) (emphasis in original).

With this context in mind: Pseudonymity in a section 6851 case is not a remedy to which any litigant is entitled as a matter of right. Instead, it is a remedy that courts "may" order in exercise of their discretion. *See* 15 U.S.C. § 6851(b)(3)(B) (courts "may" grant a pseudonymity request).

In the Sixth Circuit, district courts exercise their discretionary authority over pseudonymity requests by considering the *Porter* factors:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). Because the Sixth Circuit—a controlling appellate authority—has established that standard in a published case, *see id.*, this Court also is obliged to follow it. *See Nat'l Republican Senatorial Comm. v. F.E.C.*, 117 F.4th 389, 395 (6th Cir. 2024) ("'Vertical stare decisis is absolute, as it must be in a hierarchical system.'" (quoting *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring in part))).

Further, as the Defendants have already noted, *see* Doc. 27 at 7–9, the Plaintiff not only cannot prove by, reference to the *Porter* factors, that her asserted "privacy interests substantially outweigh the presumption of open judicial proceedings[,]" *see Porter*, 370 F.3d at 560; instead, she has hardly even tried. "Thus, none of the four *Porter* factors favors pseudonymity, including the lone factor the Plaintiff contends applies here." *See* Doc. 27 at 9. For these reasons, pseudonymity is improper.

### B. CONGRESS COULD NOT HAVE COMPELLED COURTS TO GRANT PSEUDONYMITY REQUESTS IN SECTION 6851 CASES.

Apart from the fact that Congress *did* not mandate that district courts grant pseudonymity requests whenever a plaintiff asserts a section 6851 claim, *see supra* at 2, Congress also *could* not have done so by statute. There are two reasons why.

First, the presumption of openness in judicial proceedings is "constitutionally-embedded." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). Thus, "[p]ublic access to [judicial] information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Id.* at 185 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580–81 (1980)).

Given this context, pseudonymity claims—like other efforts to conceal judicial proceedings from public view—implicate "First Amendment" rights. *See Strittmatter v. Unum Life Ins. Co. of Am.*, No. 3:22-CV-212-DCLC-DCP, 2023 WL 6192723, at *2 (E.D. Tenn. Feb. 21, 2023) ("As courts have explained, Rule 10 has "'constitutional overtones,' as a plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings, a right that is supported by the First Amendment.'" (quoting *Doe v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:20-CV-01023, 2022 WL 2293898, at *2 (M.D. Tenn. June 24, 2022))); *cf. Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016) (unsealing claims involve a "First Amendment" right of access). Thus, because the Constitution is supreme where it applies, Congress could not—simply by enacting a statute—have dispensed with the public's presumptive First Amendment right of access by mandating pseudonymity even if it had tried. *See Gibbons v. Ogden*, 22 U.S. 1, 211 (1824) ("[T]he constitution is the supreme law."); *United States v. Germaine*, 99 U.S. 508, 510 (1878) ("This Constitution is the supreme law of the land, and no act of Congress is of any validity which does not rest on authority conferred by that

instrument.”).

<u>*Second*</u>, when a court has not authorized pseudonymous litigation, “federal courts lack jurisdiction over the unnamed parties,” and “a case has not been commenced with respect to them.” *See Citizens for a Strong Ohio v. Marsh*, 123 F. App’x 630, 637 (6th Cir. 2005) (“Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff’s case, because, as the Tenth Circuit has held, ‘the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.’” (quoting *Nat’l Commodity & Barter Ass’n, Nat’l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989))). Further, “[t]he horizontal separation of powers prevents Congress from flattening Article III’s limitations” through statutes. *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 466 (6th Cir. 2019). Thus, without running afoul of separation of powers guarantees, no federal statute could lawfully compel a district court to permit pseudonymous litigation that the court did not independently consider appropriate, because doing so would interfere with Article III limitations. *Id.* And in the Sixth Circuit, whether pseudonymity is appropriate is governed by the *Porter* factors, which district courts are obliged to apply. *See supra* at 3.

### C. THE PLAINTIFF HAS NOT SATISFIED THE *PORTER* FACTORS.

For the reasons the Defendants have already explained, “none of the *Porter* factors supports pseudonymity” under the circumstances presented here. *See* Doc. 27 at 8–9. Further, apart from those four traditional factors, myriad “countervailing considerations strongly support transparency” under this case’s unique facts. *See id.*

at 10–15. Nor would section 6851-specific considerations change the outcome, in part because it is not even clear that section 6851 was effective when the Plaintiff's alleged claims accrued. *See id.* at 15–18. Thus, the Plaintiff's failure to satisfy the *Porter* factors is dispositive of her pseudonymity claim here.

### D. THE PLAINTIFF'S LIKELIHOOD OF SUCCESS MATTERS.

This Court's order observes that the terms of section 6851(b)(3)(B) "appear to apply only in the event the plaintiff is successful on the merits." Doc. 35 at 4. There is some authority supporting this Court's reading. *See Doe v. McCoy*, 2024 WL 843908, *9 (N.D. Ga. Feb. 28, 2024) (suggesting that 15 U.S.C. § 6851 "provides for injunctive relief maintaining the plaintiff's confidentiality *in the event his or her claim succeeds.*") (emphasis added).

This Court need not go nearly that far in denying the Plaintiff leave to litigate pseudonymously, though, and it may deny her motion on a narrower ground. As the Defendants have already noted:

> [T]o obtain a protective order, a movant must establish its claim for protection with "specific facts[.]" *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). That means *evidence*. And here, the Plaintiff—who initiated this action by unverified Complaint (Doc. 1) and also has chosen not to support her motion for pseudonymity with a sworn declaration or any other evidence (*see* Docs. 16–17)—has offered none.

Doc. 27 at 17.

By contrast, even at this early juncture, the Defendants have brought evidence to the Court's attention demonstrating that the Plaintiff provided the Defendants written consent—*twice*—to use the images over which she has sued here "in any way they see fit." *See* Docs. 20-1, 20-2.

The Plaintiff has two responses to this outcome-determinative problem, neither of which has any chance of succeeding.

*__First__*, the Plaintiff alleges she never signed the releases that she signed. *See* Doc. 1 at ¶ 74. She did sign them, though. *See* Docs. 20-1, 20-2. The Defendants have even retained a credentialed handwriting expert to analyze the Plaintiff's signature. Although the Defendants—strictly as a courtesy, because the Plaintiff has insisted that the Defendants not file identifying information in the record, *see* Docs. 22, 23—have not appended their expert's full report here, their expert's essential and verbatim conclusion, partially redacted here under protest, is as follows:

> The writing features and characteristics depicted in the questioned 'J[redacted] W[redacted]-H[redacted]' signature on Exhibit Q1 were compared in detail to the writing habits of J[redacted] W[redacted]-H[redacted] as reflected in the submitted known writings (K2). Numerous and cumulative similarities exist, including letter formations, baseline features, relative spacing, stylistic features, height relationships, intra-letter features, and introductory/terminal strokes. There are no fundamental differences.
>
> **__CONCLUSIONS__**
>
> The questioned 'J[redacted] W[redacted]-H[redacted]' signature on Exhibit Q1 was written by J[redacted] W[redacted]-H[redacted] (K2).

*__Second__*, the Plaintiff alleges "[i]n the alternative" that she was fraudulently induced into signing the releases in question. *See* Doc. 1 at ¶ 86. This "alternative" theory has no hope, either. The reason is not only that the factual underpinnings of the Plaintiff's claim are bogus. Instead, the claim *also* fails, necessarily, because the Plaintiff executed the releases at issue in 2010, *see* Docs. 20-1, 20-2, and under Tennessee law, "fraud in the inducement of a contract sounds in tort and is therefore subject to § 28–3–105's three year limitation period." *Moorhead v. Allman*, No.

M2009-01822-COA-R3CV, 2011 WL 676017, at *5 (Tenn. Ct. App. Feb. 24, 2011); *see also Nucsafe, Inc. v. Farber*, No. E2023-01809-COA-R3-CV, 2024 WL 3898538, at *2 (Tenn. Ct. App. Aug. 22, 2024) (noting Tennessee's "three-year statute of limitations for fraud"). The Plaintiff did not initiate this action asserting that she was fraudulently induced into signing the two releases until some fifteen years after she executed them, though. *Compare* Doc. 1, *with* Docs. 20-1, 20-2. Thus, the Plaintiff's fraudulent inducement claim here is time-barred by over a decade.

For these reasons alone, this Court should exercise its discretion to deny the Plaintiff leave to litigate pseudonymously. The Plaintiff has the burden of establishing her asserted need for a protective order with evidence. Even so, she has not submitted any. By contrast, the Defendants have introduced outcome-determinative evidence that the Plaintiff's claims are bogus and otherwise have no chance of success. Under these circumstances, any inquiry into the merits precludes granting the Plaintiff leave to litigate this case in secret.

## III. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Proceed Under Pseudonym (Doc. 16) should be **DENIED**.

Respectfully submitted,

By: /s/ Daniel A. Horwitz________

DANIEL A. HORWITZ, BPR #032176
SARAH L. MARTIN, BPR #037707
MELISSA K. DIX, BPR #038535
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
(615) 739-2888
daniel@horwitz.law
sarah@horwitz.law
melissa@horwitz.law

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 8th day of May, 2025, a copy of the foregoing was served via the Court's e-filing system upon:

Chanelle Acheson
Waddey Acheson LLC
1030 16th Ave. South, Suite 300
Nashville, TN 37212
(615) 839-1100
chanelle@waddeyacheson.com

*Counsel for Plaintiff*

By: /s/ Daniel A. Horwitz__________
Daniel A. Horwitz, Esq.